UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRISTEN and BRYAN KRAMER, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF OREGON, an Oregon Corporation,<br><br>Defendant. | CASE NO. 19-5365 RJB - MAT<br><br>ORDER ON PLAINTIFFS KIRSTEN AND BRYAN KRAMER'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Kirsten and Bryan Kramer's Motion for Partial Summary Judgment (Dkt. 14) and the Defendant Safeco Insurance Company of Oregon's ("Safeco") motion for partial summary judgment (Dkt. 20). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

This case arises from a dispute about uninsured/underinsured motorist ("UIM") coverage. Dkt. 1. In the pending motions, the Plaintiffs move for summary judgment on their claims for bad faith and violation of the Washington Consumer Protection Act, RCW 19.86 *et. seq.*, ("CPA") based on Safeco's handling of its rights pursuant to *Hamilton v. Farmers Ins. Co. of*

ORDER ON PLAINTIFFS KIRSTEN AND BRYAN KRAMER'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

| | |
|---|---|
| 1 | *Washington,* 107 Wash.2d 721 (Wash. 1987). Dkt. 14 and 23. In its response, Safeco opposes |
| 2 | the Plaintiffs' motion and cross-moves for summary judgment on both the bad faith and CPA |
| 3 | claims, maintaining that both claims should be dismissed. Dkt. 20. For the reasons provided |
| 4 | below, Plaintiffs' motion (Dkt. 14) should be granted, in part, and denied, in part, and Safeco's |
| 5 | motion (Dkt. 20) should be denied. |

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

### A. FACTS

Both parties agree that there are issues of fact as to the underlying accident and agree that those issues are not relevant to the pending motion. Dkts. 14 and 20. For background only, the following paragraph is taken from the Complaint. The Complaint alleges that on September 6, 2016, Plaintiff Kristen Kramer's car was rear-ended by a company van owned by Poulsbo Cleaning Company. Dkt. 1-2. According to the Complaint, Ms. Kramer's car was totaled and she suffered physical injuries, including broken bones. *Id.* The Complaint maintains that the Kramers filed a lawsuit against Poulsbo Cleaning Company, its owner and the employee-driver. *Id.*; *Kramer v. Poulsbo Cleaning Services, LLC*, *et. al*., filed in the Kitsap County, Washington, Superior Court, Case No. 18-2-01587-18. The Complaint asserts that after Progressive Insurance, the insurer for Poulsbo Cleaning Company, informed the Plaintiffs that Poulsbo Cleaning Company was out of business and had no assets, and that the employee-driver had no insurance or assets, Progressive Insurance offered the policy limits of $50,000 conditioned upon a full release of all claims. Dkt. 1-2.

The following facts are relevant to the pending motions.

At the time of the accident, the Plaintiffs had an automobile insurance policy, which included uninsured/underinsured motorist coverage, with Defendant Safeco. Dkt. 16. After

ORDER ON PLAINTIFFS KIRSTEN AND BRYAN KRAMER'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

receiving the July 10, 2018, offer of settlement from Poulsbo Cleaning's insurance company, on July 12, 2018, the Plaintiffs' lawyer wrote Safeco to: (1) "involve [it] in the decision to resolve the case by accepting the $50,000 offer so as not to 'compromise [Safeco's] lien without [its] prior consent," (2) make a claim for UIM coverage and (3) to discuss Safeco's demand for payment of subrogation damages. Dkt. 17-3, at 2-3. On July 30, 2018, having not heard from Safeco, Plaintiffs' counsel emailed Safeco to inquire on the status of the claim. Dkt. 17-4, at 2.

Safeco's records indicate that the July 12, 2018 letter from Seattle, Washington was received on July 20, 2018 in Portland, Oregon. Dkt. 21, at 6. In an email dated August 1, 2018, Safeco's claims representative states that she did not get notice of the claim until July 24, 2018. Dkt. 21, at 9. At that time, Safeco requested more information; it did not take a position as to the offer of settlement from Progressive (the Poulsbo Cleaning Company's insurance carrier). Dkt. 21, at 11. Plaintiffs provided a majority of the requested information on August 20, 2018 (Dkt. 17-9), and by September 13, 2018, the rest was provided (Dkt. 21, at 13).

On September 14, 2018, Safeco wrote the Plaintiffs and their counsel. Dkt. 17-6. That letter provided that:

> In response to your July 12, 2018 letter, we elect to exercise our buyout rights as expressed in *Hamilton v. Farmers*, 107 Wn.2d 721 (1987), and advance the $50,000.00 policy limit offer extended by Progressive for the September 6, 2016 accident. In doing so, Ms. Kramer does not need nor should she sign any release or dismissal of the lawsuit in favor of Meagan Johnston [the employee-driver] or Poulsbo Cleaning Services, LLC . . . Instead, Ms. Kramer should continue with her lawsuit against Ms. Johnston and Poulsbo Cleaning as set forth in the case entitled Kirsten and Bryan Kramer v. Poulsbo Cleaning Services, LLC aka Viking Janitorial and Meagan L. Johnston, filed in the Kitsap County Superior Court, Case No. 18-2-01587-18.

Dkt. 17-6, at 3. Safeco offered to pay a pro-rata share of the costs (excluding attorneys' fees) to continue with the case but, informed the Plaintiffs that it did not intend to intervene in the Kitsap County case. *Id.*

Both Ms. Kramer and Mr. Kramer state that after being told that Safeco was insisting on them continuing with the underlying case in Kitsap County, they were "angry and upset and anxious" about the need to proceed to trial even "though the policy limits had been offered to resolve the matter." Dkts. 19 and 20.

On September 25, 2018, the Plaintiffs' counsel wrote Safeco and indicated that the offer failed to comport with Washington law under *Hamilton*. Dkt. 17-7. The letter asserts that "there is nothing in the *Hamilton* decision that allows Safeco to only advance the settlement offer, refuse to pay out UIM benefits and force the Kramers to litigate their claim against Progressive's insured." *Id.*, at 3-4. The letter asked Safeco to let them know by October 5, 2018 if it still wished "to buyout the Kramers' claim against Progressive." *Id.*, at 4. They informed Safeco that they would not continue the lawsuit against Poulsbo Cleaning Co., et. al. but that Safeco was free to do so. *Id.* They stated that if Safeco did not confirm by October 5, 2018 that they intended to buyout the claim, the "Kramers will accept the Progressive policy limits offer and execute whatever release is required." *Id.* They indicated that they will then look to Safeco to "satisfy its legal obligations to pay out the difference between the policy limits and [the Kramers'] damages." *Id.*

On October 4, 2018, Safeco responded by email and asked for a teleconference with Safeco's newly hired outside counsel. Dkt. 17-8, at 2. After a phone call and more email, on October 15, 2018, Safeco wrote the Plaintiffs and informed them that it was not going to exercise its rights under *Hamilton* to buyout the claim against Progressive. Dkt. 17-10, at 2. It agreed that a settlement with Progressive, including an executed release of all claims, would not prejudice Ms. Kramer's right to purse an UIM claim under the policy. Dkt. 17-10, at 2. Safeco indicated that it would still seek applicable offsets. *Id.*

The next day, on October 16, 2018, Safeco emailed Plaintiffs' counsel, reiterated that they were not exercising Safeco's rights under *Hamilton* and stated, "[r]ather than substituting payment, we agree to intervene in the underlying lawsuit to litigate the value of you client's UIM claim if you feel there is UIM value after your client accepts the $50,000 policy limits from Progressive." Dkt. 17-11. Plaintiff's counsel states that he contacted Safeco at that point and "explained that Safeco's intent to intervene [in the lawsuit against Poulsbo Cleaning Company] makes no sense because Poulsbo Cleaning Company will not settle with the Kramers absent a full release of claims." Dkt. 17, at 3.

Over three months after the Plaintiffs informed Safeco of the offer of $50,000 from Progressive, the Plaintiffs were able to and did accept the offer. Dkts. 19 and 20. They deposited the check in the bank right away but, testified that they lost the interest they should have earned had they been able to settle with Progressive three months prior. Dkt. 22, at 23.

### B. PROCEDURAL HISTORY

On March 20, 2019, the Plaintiffs filed this case against Safeco in Kitsap County, Washington, Superior Court. Dkt. 1-2. The Plaintiffs assert claims for breach of contract, breach of the covenant of good faith and fair dealing, Washington Administrative Code violations, bad faith, violations of the CPA, and violations of the Washington Insurance Fair Conduct Act, RCW 48.30.010 *et. seq.*, ("IFCA"). *Id.* They seek damages, including treble damages, attorneys' fees and costs. *Id.*

### C. PENDING MOTIONS

The Plaintiffs now move for summary judgment on their claims for bad faith and violation of the CPA. Dkt. 14. They maintain that Safeco acted in bad faith and violated the CPA based on its unreasonable, frivolous and unfounded interpretations of *Hamilton* and by

"taking positions that completely disregard common sense and the interests of the Kramers." Dkts. 14 and 23. (The Plaintiffs initially moved for summary judgment for both claims on some additional factual grounds: violations of the Washington Administrative Code's timeframe requirements for insurance companies. Dkt. 14. In their reply, the Kramers concede that Safeco pointed to sufficient issues of fact as to timeliness that are sufficient to defeat summary judgment. Dkt. 23.) They assert that they were damaged because of Safeco's conduct. Dkt. 14 and 23.

In response, Safeco maintains that it did not act in bad faith because its' *Hamilton* election did not breach the policy, UIM insurers and their insured have a different relationship such that it is entitled to make decisions to further its own interest as long as it acts with honesty, and even if it was in error in the way it interpreted *Hamilton,* it was a good faith mistake. Dkt. 20. Safeco argues that the Plaintiffs fail to point to evidence that they were damaged. *Id*. Safeco argues that the Plaintiffs fail to provide evidence of all the elements of the CPA claim because Safeco's *Hamilton* election was reasonable, and the Plaintiffs have failed to prove they were harmed. *Id.* Safeco additionally argues that based on the record, the Court should *sua sponte* grant it summary judgment on the claims, find that Safeco's *Hamilton* election was appropriate, all the communications timely, and dismiss the bad faith and CPA claims. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. WASHINGTON SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law.

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

### C. CLAIM FOR BAD FAITH

In Washington, "[a]n insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003). "Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Id.,* at 485. Ordinarily, "[w]hether an insurer acted in bad faith remains a question of fact." *Id.* "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Id.*

> 1. <u>Duty and Breach – Safeco's Conduct Regarding the Settlement Offer from Progressive Pursuant and the Washington Supreme Court Case *Hamilton*</u>

"[T]he public policy underlying UIM is creation of a second layer of floating protection for the insured." *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 13 (2001). "Coverage eligibility requires the insured to demonstrate that he or she is legally entitled to recover in tort from the underinsured motorist." *Tribble v. Allstate Prop. & Cas. Ins. Co.*, 134 Wn. App. 163, 168 (2006)(*internal quotation marks and citations omitted*). Washington law requires that "[t]he insurer must pay its insured's uncompensated damages until the underinsurance policy coverage is exhausted or until the insured is fully compensated, whichever occurs first." *Id.,* at 168-69.

UIM insurers, like Safeco, owe a duty to "deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest." *Ellwein v. Hartford Acc. & Indem. Co.*, 142 Wn.2d 766, 781 (2001)(*as amended*)(*overruled on other grounds by Smith v. Safeco Ins. Co.*, 150 Wn.2d 478 (2003)). In order to establish bad faith, an insured must show the breach of that duty was "unreasonable, frivolous, or unfounded." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 132 (2008).

The Plaintiffs argue that Safeco, as their UIM insurer, acted in bad faith when it relied on an unreasonable and questionable interpretation of its rights under *Hamilton* from July 20, 2018 (the date Safeco asserts that it received Plaintiffs' lawyers' letter about the Progressive settlement) to October 15, 2018 (when Safeco emailed the Plaintiffs and let them know that they could go ahead and accept the Progressive settlement and release Poulsbo Cleaning and the employee-driver in the Kitsap County, Washington, Superior Court case). To understand a "*Hamilton* election," a quick review of the case is necessary.

In *Hamilton,* a UIM insurer asserted that it was prejudiced by its insureds' settlement and release of the original tortfeasor because it lost its subrogation rights against that tortfeasor. *Id.* The UIM insurer contended that it was "entitled to offset its payment to the insured by the amount of available assets of the tortfeasor which are shielded from recovery by the release." *Id.*, at 729. In deciding that the UIM insurer was not so entitled, the *Hamilton* court noted: "the practical ramifications" of insurance litigation require a plaintiff to release a tortfeasor to obtain a settlement; further, the UIM insurer does not have the right to interfere with that settlement. *Id.*, at 730-31. It concluded that RCW 48.22.040(3), which provided for reimbursement for a UIM payments, does not include subrogation rights, but only "provides an insurer a right of reimbursement of its payments from any excess recovery of the insured resulting from a

settlement or judgment." *Id.,* at 729.  It held that "the statutory aim of fully compensating the insured cannot be defeated by offsetting underinsurance coverage by tortfeasor assets that have not been received by the insured." *Id.*, at 735.  To protect the settlement and other rights of the insured, the *Hamilton* court pointed to an option for an UIM carrier "who seeks recovery from the tortfeasor:"

> The underinsurer can succeed to the rights of its insured against the tortfeasor by (1) paying the underinsurance benefits prior to release of the tortfeasor and (2) substituting a payment to the insured in an amount equal to the tentative settlement. These payments assure that the injured insured receives the full benefit of the proposed settlement and his underinsurance coverage. The underinsurer then can pursue the insured's rights against the tortfeasor and attempt to recover assets in addition to the settlement offer. Any recovery over the amount of the substituted settlement payment must be applied first to any uncompensated damages of the injured insured. Only after the insured's damages are fully compensated can the underinsurer retain any recovery. Thus, if the underinsurer determines that the tortfeasor has available assets which would reduce its underinsurance payments after full compensation of the insured's damages, it may secure its subrogation rights by substituting a payment to the insured in an amount equal to the settlement offer.

*Id.*, at 734.  The *Hamilton* court pointed with approval to an opinion by the Supreme Court of Minnesota in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn. 1983). *Id.*  In *Schmidt*, the Supreme Court of Minnesota also a pointed to a similar solution to an UIM insurer seeking recovery against a tortfeasor:

> Between these two parties [a tortfeasor and underinsurer], the equities balance in favor of the underinsurer. The underinsurer, however, will have this subrogation right against the tortfeasor only if it has paid underinsurance benefits prior to release of the tortfeasor. Thus, the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect those potential rights by paying underinsurance benefits before release. The district court in each of the cases before us provided just this opportunity. Under the procedure set out in those orders, the underinsurer was given notice of the tentative settlement agreement and a period of time in which to assess the case. In that time it could evaluate relevant factors, such as the amount of the settlement, the amount of liability insurance remaining, if any, the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation, the total amount of the insured's damages, and the expenses and risks of litigating the insured's cause of action. If

ORDER ON PLAINTIFFS KIRSTEN AND BRYAN KRAMER'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

> the underinsurer were to determine after assessment that recovery of underinsurance benefits it paid was unlikely (e.g., where the liability limits are exhausted or nearly so and the tortfeasor is judgment-proof), it could simply let the "grace period" expire and permit the settlement and release. It must, of course, thereafter process the underinsurance claim but would not be able to recover those payments through subrogation.

*Id.,* at 733, (*quoting Schmidt v. Clothier,* 338 N.W.2d 256 (Minn. 1983).

In this case, reasonable minds could reach but one conclusion: Safeco acted in bad faith. For months, it did not act in good faith or reasonably toward the Plaintiffs. It waited months to follow either of the *Hamilton* court's proposed solutions. After learning that there were no additional available assets or insurance from either Poulsbo Cleaning or the employee-driver, and that the full amount of insurance ($50,000) was being offered from Progressive, Safeco informed its insured that it would pay the Plaintiffs the full $50,000, but that it expected the Plaintiffs to continue with the case against Poulsbo Cleaning and the employee-driver. Further, while Safeco agreed to pay "pro-rata share of costs" it did not intend to pay for attorneys' fees to continue the case. It attempted to force Plaintiffs into litigating a case against parties who had no assets or insurance (aside from the policy limits of $50,000 being offered) which would result in nothing for its insured except additional attorneys' fees and costs. Safeco would benefit in that it would not have to litigate the amount of Plaintiffs' damages and would not have to pay much for that information (just its pro-rata share of the costs). Safeco's conduct was not in good faith, was unreasonable, and its proffered justification, that it was exercising its rights under *Hamilton,* was frivolous and unfounded.

> 2. <u>Causation and Damages - Safeco's Conduct Regarding the Settlement Offer from Progressive Pursuant and the Washington Supreme Court Case *Hamilton*</u>

The Plaintiffs have demonstrated that reasonable minds could reach but one conclusion: they were damaged by Safeco's conduct. Safeco argues that the Plaintiffs failed to demonstrate

that they were damaged in any way by Safeco's delay in allowing them to settle their case with Progressive.

The Plaintiffs point out that over three months after the Plaintiffs informed Safeco of the offer of $50,000 from Progressive, they were able to and did accept the offer. Dkts. 19 and 20. They deposited the check in the bank right away but, testified that they lost the interest they should have earned had they been able to settle with Progressive three months prior. Dkt. 22, at 23. At a minimum, the Plaintiffs have shown that Safeco's delay caused them to lose the interest on the $50,000 they would have earned absent Safeco's conduct.

3. <u>Bad Faith: Duty, Breach, Causation, Damages based on Timeframes in the Washington Administrative Code</u>

There are issues of fact as to whether Safeco failed to timely respond to the Plaintiffs' claims as required under the Washington State Administrative Code. The cross motions for summary judgment on this factual basis for the Plaintiffs' bad faith claim should both be denied. No further analysis on whether Safeco acted in bad faith for failing to comply to the required statutory timeframes is necessary.

4. <u>Conclusion</u>

The Plaintiffs' motion for summary judgment on their bad faith claim, based on Safeco's conduct related to the settlement offer with Progressive, (Dkt. 14) should be granted and Safeco's motion for summary judgment to dismiss the bad faith claim (Dkt. 20) should be denied.

**D. CPA CLAIM**

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training*

*Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.

The Plaintiffs' motion for summary judgement on their CPA claim, based on Safeco's conduct relating to the settlement offer from Progressive, (Dkt. 14) should be granted and Safeco's motion on the CPA claim (Dkt. 20) denied.

As to the first CPA factor, the Washington State Supreme Court recently noted that "[i]t is well established that insureds may bring private CPA actions against their insurers for breach of the duty of good faith or for violations of Washington insurance regulations." *Peoples v. United Servs. Auto. Ass'n*, 96931-1, 2019 WL 6336407, at *3 (Wash. Nov. 27, 2019). While there are issues of fact as to whether Safeco violated Washington insurance regulations, as above, reasonable minds could not differ on whether Safeco violated its duty of good faith. The Plaintiffs have demonstrated that Safeco's attempt at forcing them to litigate against parties who had no assets or insurance (other than the $50,000 that was offered in settlement) to establish the Plaintiffs' damages was in bad faith and is an unfair act under the CPA. As to the second and third CPA factors, it is undisputed that Safeco's acts occurred in trade or commerce and the Washington "legislature has expressly declared that the insurance business is one 'affected by the public interest.'" *Peoples,* at 3. Further, as above, regarding the fourth and fifth CPA factors, the Plaintiffs have demonstrated that by being unable to deposit the $50,000 settlement check earlier because of Safeco's conduct, they were damaged by loss of interest they would have earned on the money. The Plaintiffs' motion for summary judgment on their CPA claim (Dkt. 14) should be granted and Safeco's motion (Dkt. 20) denied.

# III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff's Kirsten and Bryan Kramer's Motion for Partial Summary Judgment (Dkt. 14) **IS:**
- **GRANTED** as to their bad faith and CPA claims based on Safeco's conduct related to the settlement offer with Progressive;
- **DENIED** as to their bad faith and CPA claims based on violations of the Washington Administrative Codes; and
- Defendant Safeco Insurance Company of Oregon's motion for partial summary judgment (Dkt. 20) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 18th day of December, 2019.

ROBERT J. BRYAN
United States District Judge